# In the United States Court of Federal Claims

No. 16-358
(Filed: 9 September 2020)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DR. LAKSHMI ARUNACHALAM, | * | |
| | * | |
| Plaintiff, | * | *Pro se;* Patent Infringement; |
| | * | RCFC 12(b)(1); RCFC 12(b)(6); |
| | * | Motion to Dismiss. |
| v. | * | |
| | * | |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Dr. Lakshmi Arunachalam*, Menlo Park, CA, *pro se*.

*Scott David Bolden*, Deputy Director, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Gary L. Hausken*, Director, *Sarah Craven* and *Kakoli Caprihan*, United States Patent and Trademark Office, of counsel, and *Andrew P. Zager*, Department of the Navy, all of Washington, DC, for defendant.

## OPINION AND ORDER

**HOLTE**, **Judge**.

Plaintiff accuses the government of infringing U.S. patent no. 7,340,506 (the '506 patent), in addition to numerous miscellaneous claims for relief. The government moved to dismiss plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Prior to deciding the government's motion to dismiss, this Court stayed the current litigation pending decision of the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO") in a Covered Business Method ("CBM") review of the '506 patent. This case was transferred to the undersigned Judge on 29 July 2019. Following the PTAB's decision in the CBM proceeding, and passage of the date by which plaintiff may appeal the PTAB's decision to the Federal Circuit, the government filed a renewed motion to dismiss plaintiff's claims under RCFC 12(b)(1) and 12(b)(6). Plaintiff further filed a series of motions seeking various forms of relief. The Court stayed all other motions, deferring consideration until addressing the government's jurisdictional motion as it would be dispositive of all claims in the case. The Court originally scheduled oral argument on the government's motion to dismiss for 17 April 2020. After plaintiff's second request to reschedule oral argument and repeated miscellaneous filings disregarding the Court's orders directing the stay in this case,

the Court now rules on the government's motion to dismiss on the papers.  For the following reasons, the Court **GRANTS** the government's motion to dismiss.

## I.    Procedural and Factual History

Dr. Lakshmi Arunachalam, the sole inventor of the '506 patent, filed the application that eventually issued as the '506 patent on 23 February 2001.  *See* U.S. Patent No. 7,340,506 to Arunachalam ("'506 Patent").  The '506 patent was filed as a continuation of application no. 09/296,207, filed 21 April 1999, which claimed priority to provisional application no. 60/006,634, originally filed 13 November 1995.  *Id.*  After just over seven years of prosecution before the USPTO, the '506 patent issued 4 March 2008 with 19 total claims, four of which were independent claims.  *See id.*  The '506 patent was assigned to WebXchange, Inc. ("WebXchange").  *Id.*  The '506 patent, "Value-added Network Switching and Object Routing," "provides a method and apparatus for providing real-time, two-way transactional capabilities on the network."  '506 Patent at Cover Page.  Plaintiff characterizes the '506 patent as covering the invention of the internet of things, characterizing herself as "the Inventor of the Internet of Things – Web Apps Displayed on a Web browser."  *See Pro Se* Pl. Dr. Lakshmi Arunachalam's Resp. to Def.'s Mots. for Leave to File Renewed Mot. to Dismiss Pl.'s First Am. Compl. and Def.'s Renewed Mot. to Dismiss Pl.'s First Am. Compl. at 6, ECF No. 56 ("Pl.'s Opp'n to MTD").  Plaintiff asserts the "patented technology has created the millennial generation and transformed the way we live, work and play and is mission critical to how the United States conducts its business and operations today on the Web in its various agencies."  Am. Compl. ¶ 3.

Prior to any proceedings in this Court, the '506 patent underwent significant post-grant proceedings before both the USPTO and the PTAB.  On 19 December 2008, Microsoft Corporation ("Microsoft") requested an *inter partes* reexamination of all 19 claims of the '506 patent.  *Microsoft Corp. v. WebXchange Inc.*, No. 2013-008997, 1 (P.T.A.B. June 30, 2014) ("*Microsoft* Reexam."); Def.'s Renewed Mot. to Dismiss Pl.'s First Am. Compl. at 3 ("Gov't MTD").  In addition to the 19 existing claims, WebXchange added an additional 40 claims during the reexamination proceeding.  *See Microsoft* Reexam.; Gov't MTD at 3.  The patent examiner rejected all 19 of the original claims, in addition to 38 of the 40 newly added claims.  *See Microsoft* Reexam.; Gov't MTD at 3.  The '506 patent was thus left with only two claims: claims 20 and 21.  '506 Patent Reexamination Certificate; Gov't MTD at 3–4.  On appeal to the PTAB of the patent examiner's rejections during the reexamination proceeding, the PTAB affirmed the rejection of all 57 claims.  *Microsoft* Reexam. at 2; Gov't MTD at 3–4.  As Microsoft did not appeal the PTAB's decision to the Federal Circuit, the '506 patent was reissued with just the two remaining claims:  claims 20 and 21.  *See* Inter Partes Reexamination Certificate of U.S. Patent No. 7,340,506 (issued Oct. 15, 2014); Gov't MTD at 4.

Plaintiff filed her complaint in this Court on 21 March 2016.[1]  *See* Compl.  On 20 May 2016, "SAP America, Inc. filed a petition with the PTAB seeking a Covered Business Method

---

[1] On 12 July 2016, plaintiff was granted leave to file an amended complaint, and the amended complaint was docketed that same day.  *See* Order, ECF No. 7; Am. Compl., ECF No. 8.  Plaintiff's amended complaint adds a series of miscellaneous claims, only some of which relate to the '506 patent, in addition to the original claims of patent infringement presented in the 21 March complaint.

(CBM) Review challenging the patentability of Claims 20 and 21 of the '506 Patent." Gov't MTD at 5. In the CBM proceeding, SAP America, Inc. ("SAP") "asserted that the claims of the '506 Patent were not patent eligible under 35 U.S.C. § 101 and unpatentable as obvious under 35 U.S.C. § 103." *Id.* On 30 January 2017, this Court stayed further proceedings in this case pending the PTAB's final written decision.[2] *See* Order, ECF No. 22. On 21 December 2017, the PTAB issued a final written decision finding the remaining claims of the '506 patent, claims 20 and 21, "unpatentable." *SAP America, Inc. v. Lakshmi Arunachalam*, No. CBM2016-00081 (P.T.A.B. Dec. 21, 2017).

Following the PTAB's final written decision, plaintiff attempted to collaterally attack the legitimacy of the PTAB's decision in the CBM review in an ongoing lawsuit before the United States District Court, District of Delaware. *See Arunachalam v. Int'l Bus. Mach. Corp.*, 759 F. App'x 927 (Fed. Cir. 2019). On appeal of the dismissal of the Delaware district court action, the Federal Circuit noted "[t]he deadline to appeal the Board's decision was February 22, 2018. But Dr. Arunachalam never filed an appeal" of the PTAB's final written decision with the Federal Circuit. *Id.* at 930 (internal citations omitted). The Federal Circuit thus found "[g]iven that Dr. Arunachalam did not [appeal the PTAB's decision], the [PTAB's] decision invalidating [claims 20 and 21] is final and may not be collaterally attacked through a separate litigation." *Id.* at 933.

Following reassignment of this case to the undersigned Judge on 29 July 2019, the government filed a motion for leave to file a renewed motion to dismiss, along with the renewed motion to dismiss, on 20 August 2019. *See* Gov't MTD. The government's motion to dismiss seeks to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). *Id.* at 1. Following several requests for extensions of time, plaintiff filed a response to the government's motion for leave and the government's renewed motion to dismiss, addressing the merits of the government's renewed motion to dismiss. *See* Pl.'s Opp'n to MTD. Plaintiff further filed a motion seeking various forms of relief from the Court. *See* Pl.'s Adversely Dominated Mot. and Notice to Enforce the Mandated Prohibition from Repudiating Government-Issued Contract Grants of Any Kind, ECF No. 57. The government filed a reply to plaintiff's response brief to the government's renewed motion to dismiss on 12 December 2019.

---

[2] Plaintiff filed numerous documents and motions with the Court during the pendency of the stay, including: responses to the Court's order staying the case, ECF No. 23 ("Pl.'s Resp. to the Court Order Dated 1/30/2017, and Mot. to lift the Stay and Putting the Court on Notice of Honest Services Fraud by Def. in Association in Fact with Does and Roes 1-100") and ECF No. 25 ("Pl.'s Resp. to the Court Order Dated Dec. 2, 2016, Opposing the United States' RCFC 40.2 Notice of Directly Related Cases Filed Nov. 30, 2016 Containing *Ultra Vires* False Statements; and, Pl.'s Objections to the Court Staying the Case Until a Final PTAB Decision"); multiple motions to lift the stay, ECF Nos. 30 and 35; two letters to the Chief Judge of this court, ECF No. 32 ("Pl.'s Letter to Chief Judge Susan G. Braden to Compel Judge Firestone to Enforce U.S. Supreme Court's 1810 Ruling by Chief Justice Marshall on 'First Impression' Constitutional *Res Judicata* on 'Grants,' to Stop Frustrating the Proceedings and to Lift the Stay") and ECF No. 41 ("Pl.'s Letter to Chief Judge Susan G. Braden to Compel Judges Smith and Wheeler to Enforce U.S. Supreme Court's 1810 Ruling by Chief Justice Marshall on 'First Impression' Constitutional *Res Judicata* on 'Grants,' to Stop Frustrating the Proceedings and to Lift the Stay and Not Deny Access to Justice"); and a motion for summary judgment, ECF No. 36. To the extent any of these filings were in accordance with the Rules of the Court of Federal Claims, this Court stayed further consideration of plaintiff's motion for summary judgment on 16 June 2017. *See* Order, ECF No. 40.

*See* Def.'s Reply in Supp. of its Mot. for Leave and Renewed Mot. to Dismiss Pl.'s First Am. Compl., ECF No. 58 ("Gov't Reply").

The Court held a status conference on 21 January 2020 to discuss the government's motion for leave and renewed motion to dismiss, as well as plaintiff's miscellaneous motion. *See* Order, ECF No. 59. On the same day of the status conference, plaintiff submitted a series of additional filings, including: a status report (ECF No. 60); two notices (ECF Nos. 61 and 62); and a motion for summary judgment (ECF No. 63). Following the 21 January status conference, the Court issued an order on 23 January addressing the various pending motions as follows: granting the government's motion for leave to file a renewed motion to dismiss; lifting the stay only as to the government's motion to dismiss; staying all other pending motions, with the Court deferring consideration of all such motions pending resolution of the government's motion to dismiss; and allowing plaintiff additional time to seek representation of counsel prior to scheduling oral argument on the government's motion to dismiss. *See* Order, ECF No. 64.

Despite the Court's 23 January order lifting the stay only as to the government's motion to dismiss, plaintiff filed numerous miscellaneous documents with the court.[3] To the extent any of plaintiff's filings were not in compliance with the Rules of the Court of Federal Claims, the Court struck such filings from the record. *See* Order, ECF No. 68. To the extent the Court was able to construe any of plaintiff's miscellaneous filings as motions or responsive filings to other pending items on the docket, the Court permitted such filings. *See* Order, ECF No. 77 (directing the Clerk to "enter Exhibit 1 to plaintiff's motion for leave as a reply to the government's opposition to plaintiff's 'adversely dominated motion'"). To the extent plaintiff sought to file additional motions, the Court's 23 January order lifted the stay only as to the government's motion to dismiss; all other pending items remain stayed. *See* Order, ECF No. 64. Oral argument on the government's motion to dismiss was originally scheduled to be held telephonically on 17 April 2020. *See* Order, ECF No. 72. In response to the ongoing health crisis, the Court rescheduled the telephonic oral argument for 22 May 2020. *See* Order, ECF No.

---

[3] Plaintiff's miscellaneous filings following the 23 January order include: a response and two notices to the Court's 23 January order, ECF No. 65 ("Pl.'s Resp. to Court's Unconstitutional 1/23/20 Order that has not Addressed the Constitutional Challenge Raised and the Solemn Oath of Office to Apply Governing Supreme Court Precedents that a Grant is a Contract, and Motions"), ECF No. 66 ("Pl. Dr. Lakshmi Arunachalam's 28 U.S.C. §2403 Notice to Clerk of Constitutional Challenge to Federal Statutes"), and ECF No. 67 ("Pl. Dr. Lakshmi Arunachalam's Second 28 U.S.C. §2403 Notice to Clerk of Constitutional Challenge to Federal Statutes"); a subsequent notice, ECF No. 70 ("Notice of and Verified Claim of Trespass and Injury: In Dishonor, Breach of Fiduciary Duty/Public Trust/Solemn Oath of Office, Denial of Due Process, Moving into Jurisdiction Unknown"); a letter to the Chief Judge, ECF No. 73 ("Letter to Chief Judge Margaret Sweeney to Compel Hon. Holte to (1) Abide by his Solemn Oath of Office and Enforce Governing Supreme Court Precedent Law of the Case and the Supreme Law of the Land, (2) Reinstate Back to the Docket Dr. Lakshmi Arunachalam, a Woman's Filings D.I.'s 65, 66, 67 Stricken by the Court, (3) to Docket Two Paper Filings Dated 2/6/20 and 2/18/20 Returned by the Court of Notice of and Verified Claims of Trespass and Injury; and (4) to Stop Denying Dr. Lakshmi Arunachalam, a Woman, Access to Justice"); a motion for leave to file an amended response to the government's motion to dismiss, ECF No. 76; a reply to the government's response to plaintiff's motion seeking miscellaneous relief, ECF No. 78; and a motion to correct a title on the Court's electronic docket, ECF No. 79 ("Mot. to Correct Title in ECF No. 78 to 'Amended Response to the Government's Renewed Mot. to Dismiss', as it Misstates my Mot. ECF No. 76; and Notice that this Court's 4/14/20 Order, that is Procedurally out of Order, is Further Evidence that Judge Holte Must Recuse for Appearance of Impropriety, for Tampering with Public Record, a Federal Offense, for Making False Official Statements and Refusing to Consider All the Laws and Facts that are Material to this Case").

77.  On 21 May 2020, plaintiff filed a motion seeking to reschedule oral argument set for 22 May 2020.  The Court granted plaintiff's motion in part, canceling the oral argument scheduled for 22 May, but declined to reschedule the hearing for a third time, noting:

> Based on plaintiff's repeated filings which fail to conform to the rules of the Court, plaintiff's persistent approach to filing motions despite the Court's directive that the stay in this case was lifted only as to the government's jurisdictional motion to dismiss, and plaintiff's repeated requests to reschedule oral argument on the motion to dismiss, the Court will now proceed with ruling on the government's motion to dismiss on the papers.

Order, ECF No. 83.

Plaintiff additionally attempted to file a notice and motion directed to the Clerk of Court to change the title of a docket entry.  *See* Order, ECF No. 84.  Rule 7(b) of the RCFC provides the form of motions and other papers requesting a court order, but the RCFC do not provide for a motion directed to the Clerk of Court.  Accordingly, the Court rejected this submission.  *See id.*  Plaintiff also attempted to file a notice of appeal which the Court returned to plaintiff unfiled.  *See* Order, ECF No. 85.  The order granting in part plaintiff's motion to reschedule oral argument which plaintiff sought to appeal was not an appealable order under either 28 U.S.C. § 1295, authorizing appeals of final judgments, or § 1292, authorizing interlocutory appeals.  *See* Order, ECF No. 83.  The plaintiff then attempted to file an emergency petition for a writ of mandamus to the Supreme Court.  *See* Order, ECF No. 86.  As the Court of Federal Claims cannot receive petitions to the Supreme Court, the Court rejected this submission.  *See id.*

Other courts have commented on Dr. Arunachalam's behavior as a litigant.  In a previous proceeding, the Federal Circuit found some of her arguments, "including her requests to disqualify opposing counsel, . . . too skeletal and unpersuasive."  *Arunachalam v. Presidio Bank*, 801 F. App'x 750, 754 (Fed. Cir. 2020).  In another appeal, the Federal Circuit affirmed the district court's dismissal of Dr. Arunachalam's complaint:

> When the district court dismissed the Complaint for failure to follow Rule 8, the district court specifically warned Dr. Arunachalam that failure to follow the court's order would result in dismissal of the case.  But rather than follow the district court's instructions, Dr. Arunachalam used her amended complaint to levy additional attacks against [the trial court judge], who was not a named party in the action.  On appeal, Dr. Arunachalam has not attempted to identify any error by the district court, instead making vague statements about a "non-existent manufactured Rule 8 and 41 falsity." . . . We do not see any error in the district court's thorough evaluation of the Complaint or its decision to dismiss the Complaint in view of Dr. Arunachalam's failure to comply with the court's instructions.

- 5 -

*Arunachalam v. Apple, Inc.*, 806 F. App'x. 977, 980 (Fed. Cir. 2020)  (internal citations omitted). In the United States District Court for the District of Delaware, the trial court judge considered levying sanctions against Dr. Arunachalam:

> I do not like **s**anctioning a *pro se* litigant (and I believe I have only done so on rare occasion in seven years as a judge), but Plaintiff is a good candidate for such consideration.  She is a prodigious litigant who has filed, according to the Northern District of California, 89 cases.  In a non-patent case, she filed eight motions to recuse, to disqualify, or to reconsider motions to recuse or disqualify.  I note the repetitive motions for recusal, with no valid basis, in this case.  She is abusive, regularly accusing just about all the judges handling her cases of treason and corruption, and that there is a vast conspiracy to invalidate her patents. When she had counsel, the relationships ended badly.

*Arunachalam v. IBM*, Civil Action No. 16-281, 2019 WL 1388625, at *2 (D. Del. Mar. 27, 2019) (internal citations omitted); *see also WebXChange Inc. v. Dell Inc.*, Nos. 08-132, 08-133, 2011 WL 6328211, at *3 (D. Del. Dec. 15, 2011) ("[Dr. Arunachalam] is a difficult personality who has clashed with multiple well-respected attorneys and law firms, . . . and is not good about following the directions of the Court.").  The same trial court judge later awarded over $140,000 in attorneys' fees to the defendants.  *Arunachalam v. IBM*, No. 16-281, 2019 WL 5896544 (D. Del. Nov. 12, 2019).  Dr. Arunachalam was also ordered to pay attorneys' fees in the Superior Court of Delaware at New Castle:

> [T]he Court will award [defendant's] attorneys' fees and expenses for work done from January 13, 2018 through February 9, 2018 in the amount of $56,628 (117.4 hours x $495/hour) for attorneys' fees and $153.66 in expenses for copying in connection with the exhibits for the pre-trial stipulation and the Hearing.  The Court understands that these amounts seem excessive given the amount in controversy for the breach of the Agreement.  Due to the bad faith and overly litigious conduct of Dr. Arunachalam, the Court has determined that the number of hours expended by [defendant's law firm] was reasonable.

*Pazuniak Law Office, LLC v. Pi-Net Int'l, Inc.*, No.12-259, 2018 Del. Super. LEXIS 1083, at *6–7 (Super. Ct. Apr. 17, 2018).  As the Federal Circuit observed, "Dr. Arunachalam, though pro se, is required to follow the Federal Rules of Civil Procedure the same as every other party that litigates in the federal courts."  *Arunachalam v. Apple*, 806 F. App'x. at 980;  *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of court.").

In view of plaintiff's actions and conduct in these previous cases, what the Court would otherwise view as shocking behavior from plaintiff seems to be nothing more than plaintiff's standard behavior in court proceedings:  filing "meritless recusal motions[,]"  *Arunachalam v. Pazuniak*, No. 15-259, 2016 WL 7042113, at *1 (D. Del. Sep. 15, 2016), "persistently provid[ing] the Court with information irrelevant to the legal or factual issue before the Court[,]"  *Pazuniak Law Office, LLC v. Pi-Net Int'l, Inc.*, No. 12-259, 2016 WL 6995364, at *2 n.4 (Super. Ct. Nov. 29, 2016), and submitting as a complaint "an incomprehensible morass of allegations

that are a far cry from a short and plain statement of claims and the Court's jurisdiction over them." *Arunachalam v. Davila*, No. 18-2488, 2018 WL 10245911, at *1 (N.D. Cal. May 17, 2018).  As other judges on this court have remarked regarding a very small portion of plaintiffs, this Court is compelled to mention in this case that Dr. Arunachalam "has been informed on multiple occasions by other [] courts that [her] claims are . . . fatally flawed[,]" and her "purpose in continuing to file [pleadings] putting forth the same allegations, therefore, is frivolous and wastes valuable court resources." *Hood v. United States*, 127 Fed. Cl. 192, 216 (2016).

## II.     Standard of Review for Motion to Dismiss Pursuant to RCFC 12(b)(1) and 12(b)(6)

A defendant may seek dismissal of an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility requires the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Plaintiffs further "bear the burden of establishing the court's jurisdiction by a preponderance of the evidence." *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (citing *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)).  "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Trusted Integration*, 659 F.3d at 1163) (internal quotation marks omitted).  When deciding a motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted, the Court "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018) (quoting *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014)).  The Court, however, is "not required to accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019) (citing *Iqbal*, 556 U.S. at 678).

*Pro se* parties are granted greater leeway than litigants represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers").  Despite such leeway, this court has long recognized "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007).  The *pro se* plaintiff—like any other plaintiff—must establish the Court's jurisdiction to consider a claim. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).  If a petitioner acts *pro se* in the drafting of a pleading, the Court "may excuse its ambiguities, but it does not excuse its failures, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

## III.    Discussion

Plaintiff's amended complaint, when read with the leniency afforded *pro se* litigants, attempts to assert the following causes of action against the government:  (1) patent infringement

under 28 U.S.C. § 1498(a); (2) civil rights violations; (3) personal injury and medical injury; (4) denial of liberty rights; (5) denial of constitutional rights; (6) racketeering and obstruction of justice; (7) violation of a patent's presumption of validity; (8) fraud; and (9) elder abuse and violations of the Americans with Disabilities Act. *Minehan*, 75 Fed. Cl. at 253; *see also* Am. Compl. The government treats plaintiff's claims according to "two sets of claims:" the patent infringement claims, and the remaining miscellaneous claims. Gov't MTD at 2.

### a. Count One:  Patent Infringement

### i. Parties Arguments

The government argues the patent infringement claims against the government "should be dismissed because the asserted patent claims were cancelled by the USPTO." *Id.* at 9. Specifically, the government states plaintiff's "patent cause of action against the Government is jurisdictionally deficient because the USPTO cancelled every claim in the '506 Patent." *Id.* As "ownership of a valid patent is a jurisdictional prerequisite" to bringing suit in this Court, the government argues plaintiff "cannot meet the jurisdictional prerequisite of 'an invention . . . covered by a patent' because the '506 Patent does not cover any inventions." *Id.* at 10 (quoting 28 U.S.C. § 1498(a)). Alternatively, the government argues plaintiff's "patent cause of action against the Government is collaterally estopped" by the Federal Circuit's decision in *Arunachalam v. Int'l Bus. Mach. Corp.*, 759 F. App'x 927 (Fed. Cir. 2019). *Id.*

Plaintiff responds to the government's motion to dismiss, arguing the Federal Circuit's decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019) rendered "PTAB Judges . . . unconstitutional." Pl.'s Opp'n to MTD at 1. Based on her views of the *Arthrex* decision, plaintiff argues she "did not appeal the PTAB's ruling" because there was "no need to appeal a void order." *Id.* Plaintiff further cites a series of Supreme Court decisions from the 1800s to advance the following theories: the Court must "keep its solemn oath duty to enforce the Supreme Law of the Land;" the grant of a patent to an inventor creates a contractual relationship between the government and the inventor; and a series of attacks on various government and court officials, including "[f]ail[ure] to consider or uphold the Law of the Land," "to quash the formal mention of the *Fletcher* Challenge, the lawyerly innuendoes, slanderous and defamatory intimations, and downright lies propounded," "Judges breached their solemn oaths of office in not enforcing *Fletcher*," and "engaged in an orchestrated farce and false propaganda of a falsely alleged collateral estoppel from void orders in a collusive association-in-fact process as Solicitees to Solicitations by corporate infringers, aiding and abetting anti-trust." *Id.* at 2–7 (emphasis omitted).

In its reply brief, the government analyzed the Federal Circuit's decision in *Arthrex* in an attempt to distinguish the facts of that case from the present scenario. Specifically, the government argues "*Arthrex* did not reverse the Supreme Court's *Oil States'* ruling," nor did it "reverse all Orders by the PTAB." Gov't Reply at 4 (internal quotation marks omitted). Rather, the government asserts the Federal Circuit's decision in *Arthrex* only applies to the parties who presented the constitutional challenge, as those parties "properly and timely raised [the] Appointments Clause challenge in a direct appeal." *Id.* (internal quotation marks omitted). The government points out that plaintiff, "however, did not properly and timely raise an

Appointments Clause challenge during the proceedings involving the patentability of the '506 Patent." *Id.* (internal quotation marks omitted). As the PTAB's decision on patentability of the claims of the '506 patent were final and not appealed by plaintiff, plaintiff "failed to assert an Appointments Clause challenge, and only does so here in yet another collateral attack on the PTAB's now-final decision." *Id.* at 5.

### ii. Analysis

In another case, the Federal Circuit addressed plaintiff's challenges that the PTAB "lacks authority to invalidate her patent." *Arunachalam*, 759 F. App'x at 932. On appeal from the Delaware district court, the Federal Circuit stated:

> Among other theories, [Dr. Arunachalam] argues that the Contracts Clause under *Fletcher v. Peck* . . . and "prosecution history estoppel" under *Aqua Products, Inc. v. Matal*, bar the [PTAB] from invalidating her patent. The Supreme Court in *Oil States Energy Services, LLC v. Greene's Energy Group, LLC* rejected several similar constitutional challenges to the *inter partes* review process. In any event, the proper recourse for raising such arguments was to have appealed the Board's decision to this Court. Given that Dr. Arunachalam did not do so, the Board's decision invalidating both claims is final and may not be collaterally attacked through a separate litigation. Since the two asserted claims have been cancelled, Dr. Arunachalam's allegation of patent infringement based on these claims is moot.

*Arunachalam*, 759 F. App'x at 932–33 (internal citations omitted). Thus, to the extent plaintiff attempts to advance these same legal theories in the present case, such arguments have already been sufficiently addressed and need not be revisited here. The Board's decision is final and all of the patent claims at issue in this case are invalid. Plaintiff, yet again, may not collaterally attacked the Board's decision through a separate litigation. *Id.*

The Federal Circuit's decision in *Arunachalam*, however, was prior to the decision in *Arthrex*. As it has not been previously addressed, the Court will review plaintiff's arguments as to the applicability of the *Arthrex* decision to the present facts.

Once a patent issues, parties may request a review of the claims, in limited circumstances, outside the traditional process of district court litigation. *See* 35 U.S.C. § 311; 37 C.F.R. § 42.300 (2018). Among these post-issuance review proceedings are *inter partes* review proceedings. "*Inter partes* review is a 'hybrid proceeding' with 'adjudicatory characteristics' similar to court proceedings.'" *Arthrex*, 941 F.3d at 1325 (quoting *Saint Regis Mohawk Tribe v. Mylan Pharms.*, 896 F.3d 1322, 1326 (Fed. Cir. 2018)). *Inter partes* review proceedings are conducted as follows:

> After a petitioner files a petition requesting that the [PTAB] consider the patentability of issued patent claims, the Director of the [USPTO] determines whether to institute an *inter partes* review proceeding. A three-judge panel of [PTAB] members then conducts the instituted *inter partes* review. If an instituted review is not dismissed before the conclusion of the proceedings, the [PTAB] issues

a final written decision determining the patentability of challenged claims.  Once the time for appeal of the decision expires or any appeal has been terminated, the Director issues and publishes a certificate canceling any claim of the patent finally determined to be unpatentable.

*Id.* at 1326 (internal citations omitted).

In *Arthrex*, the Federal Circuit addressed whether "the APJs [Administrative Patent Judges] who presided over [the] *inter partes* review were . . . constitutionally appointed."  *Id.* at 1327.  The Court balanced three key factors in deciding if "the APJs were principal officers who must be, but were not, appointed by the President with the advice and consent of the Senate."  *Id.*  The three key factors, as set forth by the Supreme Court in *Edmond v. United States*, 520 U.S. 651 (1997), are:  "(1) whether an appointed official has the power to review and reverse the officers' decision; (2) the level of supervision and oversight an appointed official has over the officers; and (3) the appointed official's power to remove the officers."  *Arthrex*, 941 F.3d at 1329 (citing *Edmond*, 520 U.S. at 664–65).  Upon a balance of these factors, the Federal Circuit concluded APJS are principal officers based on "[t]he lack of any presidentially-appointed officer who can review, vacate, or correct decisions by the APJs combined with the limited removal power."  *Id.* at 1335.

Although the Federal Circuit found the appointment of APJs unconstitutional,[4] the court engaged in further analysis to address "a remedial approach . . . to address the constitutionality issue."  *Id.*  The court severed only the portion of the statute rendering the broader reading unconstitutional, as opposed to invalidating the statute as a whole.  *Id.*  Thus, the court found only "the statutory removal provisions as applied to APJs" unconstitutional, severing this provision from the broader statute and rendering the APJs inferior officers.  *Id.* at 1338.  The

---

[4] Numerous scholars have already commented on the *Arthrex* decision for other administrative law appointment disagreements.  *See* Kent Barnett, *Regulating Impartiality in Agency Adjudication*, 69 Duke L.J. 1695, 1710 n. 85 (2020) ("But [non-Administrative Law Judge's] protection from removal is not as robust as the protection for [Administrative Law Judges].  The Federal Circuit, however, declined to consider the 'circumstances which could justify a removal for such cause as would promote the efficiency of service.'") (quoting *Arthrex*, 941 F.3d at 1333 n.5) (internal citations omitted); *id.* at 1713 (internal citations omitted) ("[T]he Federal Circuit recently held that the more than two hundred administrative patent judges were *principal*—not merely inferior—officers based, in part, on their civil service protection from at-will removal."); Emily S. Bremer, *Reckoning with Adjudication's Exceptionalism Norm*, 69 Duke L.J. 1749, 1786 (internal citations omitted) ("[T]he Federal Circuit has recently held that the [Administrative Patent Judges] are principal officers who have been unconstitutionally appointed.  If, as the [Administrative Procedure Act] contemplates, the [Administrative Patent Judges] decisions were initial decisions subject to agency control, this holding may not have been necessary."); David Zaring, *Toward Separation of Powers Realism*, 37 Yale J. on Reg. 708, 731 (2020) (quoting *Arthrex*, 941 F.3d at 1338) (internal citations omitted) (noting the Federal Circuit, in *Arthrex*, found the appointment of Administrative Patent Judges unconstitutional, "but easily resolved the constitutional problems by 'severing the restriction on removal of [Administrative Patent Judges] renders them inferior rather than principal officers.' . . . [T]he remedy for the originally unconstitutional trial was a new trial before a different panel of administrative judges, now made removable in theory—though likely not in practice—by their supervisors.").  As the *Arthrex* opinion itself directly addresses under what circumstances such an argument may be made—"[t]hus, we see the impact of this case as limited to those cases where final written decisions were issued and where litigants present an Appointments Clause challenge on appeal"—it appears scholars have chosen not to comment further on the theory advanced by Dr. Arunachalam.  *Arthrex*, 941 F.3d at 1340.

Federal Circuit provided the following guidance as to the applicability of this finding in further proceedings:

> We have decided only that this case, where the final decision was rendered by a panel of APJs who were not constitutionally appointed and where the parties presented an Appointments Clause challenge on appeal, must be vacated and remanded. Appointments Clause challenges are "nonjurisdictional structural constitutional objections" that can be waived when not presented. Thus, we see the impact of this case as limited to those cases where final written decisions were issued and where litigants present an Appointments Clause challenge on appeal.

*Id.* at 1340 (internal citations omitted). The Federal Circuit has since affirmed that relief will be granted for such challenges "only when the party had properly raised the challenge on appeal[]." *Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1173, 1174 (Fed. Cir. 2019) (denying motions to vacate and remand when the Appointments Clause challenge was not raised on appeal until after petitioner's opening brief).[5]

Here, plaintiff did not properly appeal the PTAB's decision to the Federal Circuit. Instead, plaintiff first attempted to challenge the validity of the PTAB's decision in the District of Delaware, and now raises similar arguments in this Court. The Federal Circuit has already found these collateral attacks improper. *See Arunachalam*, 759 F. App'x at 932. As plaintiff did not properly appeal the PTAB's final written decision, an Appointments Clause challenge was not properly preserved on appeal. The fact that plaintiff now raises a possible Appointments Clause challenge before the Court of Federal Claims is of no consequence. *Arthrex*, 941 F.3d at 1340.

Plaintiff's failure to timely appeal the PTAB's invalidation of the only two remaining claims of the '506 patent renders such decision final. *Arunachalam*, 759 F. App'x at 932–33. Plaintiff may not use the Court of Federal Claims as a forum to collaterally attack such a final decision. As the Court finds the Federal Circuit already addressed the finality of the PTAB's decision regarding invalidation of the remaining claims of the '506 patent, the Court need not address the government's alternative argument as to the application of the doctrine of collateral estoppel. The government's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6) regarding plaintiff's claims of patent infringement under 28 U.S.C. § 1498(a) is granted.

### b.  Count Two:  Civil Rights Violations

---

[5] Other Federal Circuit panels have upheld this decision, in addition to extending the applicability to various other types of proceedings before Administrative Patent Judges. *See In re Boloro Global Ltd.*, 963 F.3d 1380, 1381 (Fed. Cir. 2020) (extending the decision in *Arthrex* to *ex parte* proceedings, noting "[b]ut the Director having conceded that the [Administrative Patent Judge's] appointments were unconstitutional, we see no principled reason to depart here from the resulting remedy applied in *Arthrex* and *VirnetX*"); *VirnetX Inc. v. Cisco Systems, Inc.*, Case No. 19-1671, 2020 WL 2511116, at *1 (Fed. Cir. Jan. 24, 2020) ("Although this appeal arises out of an *inter partes* reexamination and not an *inter partes* review as was at issue in *Arthrex*, we see no material difference in the relevant analysis."). The Federal Circuit denied a request for a panel rehearing and for rehearing en banc on 23 March 2020. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Mem.) (per curiam).

Plaintiff alleges "civil rights violations under 42 U.S.C. §§ [sic] 1983 and 1988," a "violation of the 8th Amendment by [the Court of Appeals for the Federal Circuit]," and deprivation "of the protections of the Bill of Rights, the fourteenth Amendment . . . [and the] Civil Rights Act." Am. Compl. at 10, 12. The government responds by arguing "[i]t is well-established that this Court does not have jurisdiction over claims brought under the Civil Rights Act because such claims must be brought in United States District Court." Gov't MTD at 11. The government further argues "[t]his court also lacks jurisdiction over civil rights claims brought under the First, Fifth, Eight and Fourteenth Amendments because they are not money-mandating." *Id.* at 12.

The Court of Federal Claims is a court of narrow jurisdiction "limited to money claims against the United States Government." *United States v. King*, 395 U.S. 1, 2–3 (1969) (discussing the jurisdiction of this court's predecessor court, the Court of Claims). This Court's jurisdiction is defined in the Tucker Act:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). Interpretation of the Tucker Act "require[s] that a plaintiff seeking to invoke the court's jurisdiction must present a claim for 'actual, presently due money damages from the United States.'" *Nat'l. Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (quoting *King*, 395 U.S. at 3).

The Court of Federal Claims does not have jurisdiction over civil rights claims, whether brought under the Civil Rights Act, 42 U.S.C. §§ 1983, 1988, or any of the constitutional amendments. *See Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[The] complaint included counts alleging violation of [plaintiff's] rights under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . . None of these is a sufficient basis for jurisdiction because they do not mandate payment of money by the government."); *United States v. Connolly*, 716 F.2d 882, 888 (Fed. Cir. 1983) (The Court of Federal Claims "lacks jurisdiction over appellee's first amendment claim."); *Ealy v. United States*, 120 Fed. Cl. 801, 805 (2015) ("[T]he Court lacks jurisdiction to reach [plaintiff's] claims that his civil rights under the Fourth Amendment, the Fifth Amendment Due Process Clause, the Fourteenth Amendment or Federal Civil rights laws were violated."); *Schweitzer v. United States*, 82 Fed. Cl. 592, 595 (2008) ("[The Court of Federal Claims] does not have jurisdiction over the plaintiffs' civil rights claims brought under 42 U.S.C. §§ [sic] 1983, 1985 or 1986 (2000), because it is well-settled that jurisdiction over such claims lies exclusively in the district courts."). As none of plaintiff's alleged civil rights violations invoke a money-mandating statute or constitutional amendment, the Court lacks jurisdiction over such claims, and they must be dismissed.

- 12 -

### c.   Count Three:  Personal Injury and Medical Injury

Plaintiff alleges "medical injury" as a result of the actions of the United States Court of Appeals for the Federal Circuit, stating the actions "abridged [her] 'inalienable right,' a fundamental and compelling interest, guaranteed by the Bill of Rights, her need to attend to her health in medical distress, causing medical injury."  Am. Compl. at 10.  Plaintiff further alleges "medical interference which breached multiple laws and deprived" her of certain protections.  *Id.* at 12.  The government argues this count "should be dismissed because personal injury and medical injury are causes of action that sound in tort, which are barred under the Tucker Act."  Gov't MTD at 12.

The Court of Federal Claims does not have jurisdiction over cases sounding in tort. *Trafny*, 503 F.3d at 1339 (citing 28 U.S.C. §1491(a)(1)) (reviewing a dismissal by the Court of Federal Claims for lack of jurisdiction over a tort claim and finding "[t]he court was also correct to hold that it lacks jurisdiction over tort claims"); *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims is a court of limited jurisdiction.  It lacks jurisdiction over tort actions against the United States."); *Spitters v. United States*, 710 F. App'x 896, 897 (Fed. Cir. 2018) (quoting *Brown*, 105 F.3d at 623) ("Because '[t]he Court of Federal Claims is a court of limited jurisdiction,' it 'lacks jurisdiction over tort actions against the United States.'").  To the extent plaintiff alleges medical injuries sounding in tort, such claims are beyond the jurisdiction of the Court and must be dismissed.

### d.   Counts Four and Five:  Denial of Liberty Rights and Constitutional Rights

Plaintiff alleges deprivation of "substantive and procedural due process, liberty and property rights," in addition to "deliberate indifference to the inventor Plaintiff and abridging [her] substantive liberty rights."  Am. Compl. at 12.  The government interprets these allegations "to be brought under the Due Process Clauses of the Fifth and Fourteenth Amendments, which are insufficient to confer jurisdiction because 'they do not mandate payment of money by the government.'"  Gov't MTD at 13 (quoting *LeBlanc*, 50 F.3d at 1028).

As with plaintiff's alleged civil rights violations, the Court of Federal Claims does not have jurisdiction over substantive or procedural due process claims under the Fifth or Fourteenth Amendments.  *LeBlanc*, 50 F.3d at 1028 ("[The] complaint included counts alleging violation of [plaintiff's] rights under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . . None of these is a sufficient basis for jurisdiction because they do not mandate payment of money by the government."); *Ealy*, 120 Fed. Cl. at 805 ("[T]he Court lacks jurisdiction to reach [plaintiff's] claims that his civil rights under the Fourth Amendment, the Fifth Amendment Due Process Clause, the Fourteenth Amendment or Federal Civil rights laws were violated.").  To the extent plaintiff alleges substantive or procedural due process violations under the Fifth or Fourteenth Amendments, the Court is without subject matter jurisdiction over such claims.

### e.   Count Six:  Racketeering and Obstruction of Justice

Plaintiff alleges "civil racketeering ('RICO')[] and obstruction of justice."  Am. Compl. at 13.  The government argues "this court does not have jurisdiction over allegations of

racketeering and obstruction of justice.  The civil provisions of the Racketeer Influenced and
Corrupt Organizations (RICO) Act provide the federal district courts with exclusive jurisdiction
over civil claims brought under the RICO Act."  Gov't MTD at 13.  The government further
argues this court "lacks jurisdiction over claims of 'obstruction of justice' because they are based
on the criminal code."  *Id.*

The Court of Federal Claims does not have jurisdiction over charges, whether civil or
criminal, of racketeering or obstruction of justice.  *Treviño v. United States*, 557 F. App'x 995,
998 (Fed. Cir. 2014) ("[The Court of Federal Claims] does not have jurisdiction over [plaintiff's]
RICO claims."); *Wolf v. United States*, 127 F. App'x 499, 501 (Fed. Cir. 2005) (affirming the
Court of Federal Claims grant of summary judgment which found the government "cannot be
liable for damages under the civil RICO provisions"); *Hicks v. United States*, 118 Fed. Cl. 76, 82
(2014) ("[O]utside [the Court of Federal Claims'] jurisdiction are plaintiff's claims based on the
criminal code . . . [including] obstruction of justice.").  Plaintiff's claims for civil racketeering
and obstruction of justice must be dismissed as beyond the jurisdiction of the Court.

### f.  Count Seven:  Violation of a Patent's Presumption of Validity

Plaintiff alleges "violation of 35 U.S.C. § 282 of the Patent Act—failure to abide by
'presuming a patent valid.'"  Am. Compl. at 12.  The government argues § 282 "is not a money-
mandating statute.  This statute sets forth the presumption of validity for a patent and that the
burden of establishing invalidity is on the party asserting such invalidity."  Gov't MTD at 13.

As noted by the government, the text of 35 U.S.C. § 282 does not mandate the payment
of money by the government.  Section § 282 is divided into three subsections:  subsection (a) sets
forth the general presumption of validity attributed to an issued patent noting the "burden of
establishing invalidity of a patent or any claim thereof shall rest on the party asserting such
invalidity;" subsection (b) discusses various defenses available in patent infringement actions;
and subsection (c) is a notice provision regarding assertions of validity or infringement.  35
U.S.C. § 282.  Section 282 therefore cannot provide the basis of a cause of action in the Court of
Federal Claims as it fails to mandate the payment of money by the government.  *See King*, 395
U.S. at 2–3 (1969) (finding the jurisdiction of the Court of Federal Claims is "limited to money
claims against the United States Government").  The Court of Federal Claims is therefore
without jurisdiction over plaintiff's claims brought under § 282 of the Patent Act.

### g.  Count Eight:  Fraud and Judicial Ethics

Plaintiff alleges a cause of action under "28 U.S.C. §§ 455, 144, Canons 2 and 3, . . .
[and] FRCP Rule 60(b) and 60(d), and thereby voiding the judgment."  Am. Compl. at 12.  The
government argues this count should be dismissed as these allegations "are not money-
mandating provisions."  Gov't MTD at 14.  The government argues Rule 60 of the Federal Rules
of Civil Procedure "does not itself mandate payment of money damages."  *Id.*  "Likewise,
alleged violations of the statute and codes of conduct relating to judicial misconduct and recusals
. . . are not money-mandating and, therefore, insufficient to confer jurisdiction."  *Id.*

- 14 -

Rule 60 of the Federal Rules of Civil Procedure entitles a party to seek relief from a court's judgment or order.  To the extent plaintiff attempts to allege some type of fraud under this rule, the Court of Federal Claims is without jurisdiction over such a claim as it is not money-mandating.  *See King*, 395 U.S. at 2–3 (1969) (finding the jurisdiction of the Court of Federal Claims is "limited to money claims against the United States Government").  28 U.S.C. §§ 144, 455, respectively, discuss the bias and disqualification of a judge.  These statutes are not money-mandating under the Tucker Act, and therefore do not confer jurisdiction upon this Court.  *See Jones v. United States*, No. 15-1044, 2016 WL 447144, at *2 (Fed. Cl. Feb. 4, 2016) ("[The Court of Federal Claims] do[es] not have jurisdiction over . . . the Federal Recusal Statute (28 U.S.C. § 455) because [the] statute[] do[es] not provide for the payment of money."), *aff'd*, 655 F. App'x 839 (Fed. Cir. 2016).  Similarly, the judicial canons of ethics are not money-mandating.  *See King*, 395 U.S. at 2–3 (1969) (finding the jurisdiction of the Court of Federal Claims is "limited to money claims against the United States Government").  Plaintiff's claims in count eight alleging fraud or judicial misconduct under the statutes discussed herein are not money-mandating and thus insufficient to satisfy the strict subject matter jurisdiction requirements of the Court of Federal Claims.

### h.  Count Nine:  Elder Abuse and Violations of the Americans with Disabilities Act

Lastly, plaintiff alleges "elder abuse" and deprivation "of the protections of the . . . American [sic] Disabilities Act."  Am. Compl. at 12, 20.  The government argues plaintiff fails to "specify what acts that Dr. Arunachalam considers to be 'elder abuse,' but '[t]o the extent that any injury was intentionally or negligently inflicted upon her by the Government, such claims sound in tort and are plainly barred by the Tucker Act."  Gov't MTD at 14.  The government further argues any "claims based on violations of the Americans with Disabilities Act . . . should also be dismissed because the [Americans with Disabilities Act] does not apply to the federal government."  *Id.*

As with plaintiff's allegations of personal and medical injury, plaintiff's allegations of elder abuse sound in tort.  The Court of Federal Claims does not have jurisdiction over cases sounding in tort.  *Trafny*, 503 F.3d at 1340; *Brown*, 105 F.3d at 623.  The Court of Federal Claims further lacks jurisdiction over claims brought under the Americans with Disabilities Act.  *Pierce v. United States*, 117 Fed. Cl. 798, 801 (2014) ("[The Court of Federal Claims] lacks subject matter jurisdiction over an ADA claim."), *aff'd*, 590 F. App'x 1000 (Fed. Cir. 2015).  Plaintiff's claims for elder abuse and violations of the Americans with Disabilities Act must therefore be dismissed as beyond the Court's jurisdiction.

## IV.  Conclusion

All claims of the asserted patent have been invalidated.  Plaintiff is thus unable to maintain a claim for patent infringement absent any enforceable patent claims.  Plaintiff's allegations of patent infringement against the government must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).  The Court of Federal Claims further lacks jurisdiction over plaintiff's remaining claims.  Plaintiffs allegations in counts two through nine must be dismissed for lack of subject matter jurisdiction pursuant to

RCFC 12(b)(1).  The Court has considered all of plaintiffs' arguments; to the extent not discussed specifically herein, plaintiff's other claims are unpersuasive, meritless, or unnecessary for resolving the issues currently before the Court.  Accordingly, the Court hereby **GRANTS** the government's motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6).  The Clerk is directed to **DISMISS** the case.

       **IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge
